# EXHIBIT 16

## DECLARATION OF CHARITY BRADY PURSUANT TO 28 U.S.C. § 1746

1. I, Charity L. Brady, am an attorney at Indiana Federal Community Defenders (IFCD). I represent Brandon Council in post-conviction proceedings. Following the commutation of his death sentence but prior to the issuance of President Trump's Executive Order regarding the commutees, I was told by a Bureau of Prisons (BOP) official that Mr. Council would be redesignated to another federal prison pursuant to BOP policy and that, although he had been considered for placement in ADX, BOP officials decided that ADX was not an appropriate placement. After the Executive Order and Attorney General's memorandum were issued, and after meetings with representatives of the Attorney General's office and/or the Deputy Attorney General's office, the BOP official told us that the individuals whose death sentences had been commuted would now, by default, be sent to ADX. Details of those conversations are contained in the paragraphs below.

2. Mr. Council is indigent. Post-conviction counsel were appointed pursuant to 18 U.S.C. § 3599(a)(2).

3. Mr. Council was convicted in the District of South Carolina of bank robbery resulting in death, 18 U.S.C. § 2113, and use and carry of a gun during and in relation to a crime of violence, resulting in death, 18 U.S.C. § 294(c). He was convicted on September 24, 2019, and sentenced to death by a jury on October 3, 2019. The court formally sentenced him on October 7, 2019.

4. On December 23, 2024, President Biden granted Mr. Council clemency and commuted his death sentence to life imprisonment without the possibility of parole.

5. On January 7, 2025, I attended a meeting with Mr. Synsvoll, an attorney with the Federal Bureau of Prisons, open to all attorneys for individuals whose death sentences had been commuted. My co-counsel and other attorneys from my office were also at that meeting. Mr. Synsvoll explained to us that redesignation decisions would be made according to the BOP's standard policy. BOP officials would evaluate each person individually and consider medical conditions, mental health conditions, and disciplinary history. Mr. Synsvoll invited attorneys to send him information so BOP officials tasked with making redesignation decisions could make informed decisions. Mr. Synsvoll emphasized that our clients were not automatically being sent to ADX by virtue of having formerly had death sentences. He explained that placement options included medical centers, mental health step-down programs, and USPs.

6. On January 10, 2025, I, along with my co-counsel Italia Patti, met with Mr. Synsvoll by videoconference. During that meeting, Ms. Patti and I stated that placement at a secure mental health stepdown unit would be most appropriate for Mr. Council. We explained that Mr. Council has a significant family history of mental health issues, that his records contain extensive evidence of mental illness and trauma, and that Mr. Council had repeatedly complained that his time in solitary confinement at USP Terre Haute was exacerbating his mental health symptoms.

We explained that although the BOP had not diagnosed or treated any mental illnesses, we believe Mr. Council is suffering from serious mental illness and requires treatment. We also expressed that Mr. Council's disciplinary incidents stemmed from untreated trauma, such that treatment, rather than sending Mr. Council to ADX, would be the most appropriate and effective way to address any disciplinary concerns. Mr. Synsvoll instructed us to send him material that would help the BOP make an informed decision about Mr. Council's placement.

7. Later that day (January 10, 2025), I emailed Mr. Synsvoll a letter about Mr. Council's family history, mental health symptoms, and trauma history, letting him know that I would follow up with supporting documents in the coming week.

8. On January 17, 2025, I emailed Mr. Synsvoll the supporting documents we believed would help the BOP make an informed decision about Mr. Council's placement. These documents included family medical and mental health records, information from Mr. Council's state prison records, and excerpts from Mr. Council's BOP records.

9. On January 28, 2025, I attended another meeting with Mr. Synsvoll open to all attorneys for individuals whose death sentences had been commuted. Mr. Synsvoll informed us that the only change in the process since the January 7 meeting was that after BOP officials made individualized placement decisions, as discussed on January 7, the placement decisions now needed to be submitted to the Attorney General or Deputy Attorney General for approval.

10. On February 18, 2025, I again met with Mr. Synsvoll. At that meeting, Mr. Synsvoll told me that the BOP committee tasked with making redesignation decisions had determined that Mr. Council should not be designated to ADX and that the committee was looking for a general population facility for him. However, after a meeting with the AG/DAG, the BOP committee was told that Mr. Council—along with 33 other individuals—instead would be referred for placement to ADX. Mr. Synsvoll informed me that he was not provided with a reason why the BOP's designation determination was not accepted.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and recollection. Executed on April 6, 2025.

Charity L. Brady

2