# EXHIBIT 20

Declaration of Kelley J. Henry

Kelley J. Henry, being of lawful age and a resident of Nashville, Davidson County, Tennessee, declare:

1. My name is Kelley Henry. I am employed as an assistant federal public defender. My office is appointed to represent Rejon Taylor in his post-conviction challenge to his criminal convictions and sentence. Mr. Taylor was found to be indigent at the time of appointment and remains indigent. I am his lead counsel. After Mr. Taylor's death sentence was commuted by President Biden, I was initially told by a BOP official that the BOP had, pursuant to its redesignation policies, decided not to send Mr. Taylor to ADX and that he instead would be redesignated to a high security penitentiary. Following the Executive Order and meetings with representatives of the Attorney General/Deputy Attorney General's office, the BOP official told us that Mr. Taylor would almost certainly be sent to ADX. Details about the conversations are set forth in the paragraphs below.

2. Mr. Taylor was convicted on September 8, 2008, of (1) carjacking resulting in death in violation of 18 U.S.C. § 2119; (2) firearms murder during and in relation to carjacking in violation of 18 U.S.C. § 924; (3) kidnapping resulting in death in violation of 18 U.S.C. § 1201; (4) firearms murder during and in relation to kidnapping in violation of 18 U.S.C. § 924. in the Eastern District of Tennessee, Chattanooga. Mr. Taylor was sentenced to death on December 3, 2008. Mr. Taylor's 2255 Motion to Vacate, Set Aside, or Correct Sentence is pending before District Judge Curtis L. Collier, United States District Court, Eastern District of Tennessee, Chattanooga. *Taylor v. United States*, No. 1:19-cv-147-CLC-CHS (E.D. Tenn.). His death sentence was commuted on December 23, 2024.

3. It is my understanding that before the January 20, 2025 Executive Order, Mr. Taylor had been led to believe by unit staff and the chaplain at USP-Terre Haute he would be eligible for consideration for placement into the Life Connections Program.

4. On January 3, 2025, I spoke by Microsoft Teams with BOP attorney Christopher Synsvoll. Also present was Assistant Federal Public Defender Kit Thomas. During that meeting, Mr. Synsvoll stated that Mr. Taylor was "one of the ones we are looking at for an open pod setting—most likely a mainline penitentiary." Mr. Synsvoll stated that it was not out of the question for Mr. Taylor to be placed in the Life Connections Program and he would look into

1

that. In that call, Mr. Synsvoll indicated that the team was looking at each of the 37 inmates individually to assess their specific programming needs.

5. On January 7, 2025, Mr. Synsvoll met via Zoom with attorneys who represent someone in the SCU at USP Terre Haute. During the Zoom, Mr. Synsvoll indicated there was a team in place at BOP looking at each of the 37 whose sentence had been commuted. The team was making individualized determinations as to the appropriate designation for each based on their security and programming needs. Mr. Synsvoll stated that Ricky Stover and Shane Salem were the leaders and final decision makers of the team. Mr. Synsvoll was to be our point of contact. Mr. Synsvoll indicated that approximately 20 men were being considered for placement in an open yard at mainline USP's and that some of the men were being looked at for the Life Connections Program. Mr. Synsvoll indicated that there would not be any automatic designations to ADX. For example, he stated that those who were convicted of homicides at a BOP prison would not be automatically designated to ADX. Mr. Synsvoll stated that everyone granted clemency would be looked at individually and BOP was going to make designation decisions a on case by cases basis. Mr. Synsvoll invited the attorneys to submit paperwork relevant to their client's specific needs for consideration by the BOP team.

6. On January 13, 2025, I sent materials relevant to Mr. Taylor that Mr. Synsvoll requested via email. These materials included information that Mr. Taylor had no previous carceral experience before his arrest for the offense which led to his incarceration in the SCU and that Mr. Taylor has never had a disciplinary infraction in the entire time, almost 16 years, that he has been housed in the SCU. Due to Mr. Taylor's exemplary record of good behavior, he was granted the opportunity to work as an orderly. These materials also requested that Mr. Taylor be sent to the Life Connections Program at USP Terre Haute (LCP). If the LCP was not an option, Mr. Taylor requested a medium security designation.

7. The Executive Order (EO) was issued on January 20, 2025.

8. On January 28, 2025, Mr. Synsvoll participated in another Zoom with the attorneys for the 37 men. During the call Mr. Synsvoll referred to a spreadsheet which he indicated had been put together by the BOP team and contained the team's individualized determinations of appropriate designations for each of the 37 individuals. Mr. Synsvoll stated that approximately twelve of the men in the SCU at USP Terre Haute who were

granted clemency from President Biden would likely be referred to ADX. These twelve men were informed of their ADX referral before the issuance of the EO. However Mr. Synsvoll stated that it was not definite that they would be designated to ADX. Mr. Synsvoll stated these men were the twelve that already completed their psychological assessments. Mr. Taylor was not one of these twelve men. Mr. Synsvoll indicated that because of the EO, the individualized recommendations for designation would now have to be approved by the Office of the Deputy Attorney General. If the Deputy Attorney General rejected the designations, then they would have to start over.

9. Mr. Synsvoll was asked about the notice of psychological assessment that each of the 37 had received which indicated a referral for the ADX. Mr. Synsvoll stated that everyone in the SCU got the notice of psychological assessment for ADX referral because right after the Executive Order came out, the unit team at Terre Haute got way ahead of themselves and thought all the individuals were getting referred to ADX. Mr. Synsvoll clarified that the unit team at Terre Haute was incorrect in this action. Mr. Synsvoll clarified further that the psychological assessment form that the men received does not indicate that they are going to ADX. He stated that the referrals did not come from the central office. He said that these psychological referrals would be rescinded.

10. Mr. Taylor's legal team met with Chris Synsvoll on February 18, 2025 via Microsoft Teams. Present for the meeting were myself and Assistant Federal Public Defender Sam Barry. During that meeting Mr. Synsvoll indicated that at the direction of the Office of Deputy Attorney General, Mr. Taylor and the other men, except for the "two medicals," were being referred to the ADX. Mr. Synsvoll stated that Mr. Taylor had been identified as someone who was appropriate to be placed into an intermediate step at ADX and go straight into the step-down unit, bypassing the first 12-month long step. I indicated to Mr. Synsvoll that I had consulted with a psychologist who was familiar with Mr. Taylor and also familiar with ADX who believed that ADX was an inappropriate placement setting for Mr. Taylor. I stated that our expert was in the process of writing a report to that effect. Mr. Synsvoll stated that this sort of information was important and asked for us to submit that report to him as soon as possible.

11. On February 28, 2025, I forwarded a letter from Dr. Katherine Porterfield to Mr. Synsvoll indicating that placement at ADX would be inappropriate for Mr. Taylor.

Pursuant to 28 U.S.C. § 1746 I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and recollection.

Executed this 26 day of March, 2025 in Nashville, Davidson County, Tennessee

                                              Kelley J. Henry