# EXHIBIT 22

## DECLARATION OF GERALD W. KING, JR.

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1.      My name is Gerald W. "Bo" King, Jr. I am over the age of eighteen and competent to attest to the matters in this declaration.

2.      I am an attorney. I am currently an Assistant Federal Public Defender for the Western District of North Carolina. I represent Richard Tipton.

3.      On February 3, 1993, Mr. Tipton was convicted in the United States District Court for the Eastern District of Virginia of federal crimes arising from the distribution of "crack" cocaine in Richmond, including seven counts of capital murder. On June 1, 1993, the district court sentenced Mr. Tipton to death and terms of years for those convictions.

4.      On December 23, 2024, President Joseph R. Biden commuted Mr. Tipton's sentences of death "to sentences of life imprisonment without the possibility of parole, leaving intact and in effect…all other conditions and components of the sentences previously imposed upon [him]."

5.      On January 7, 2025, I joined a video conference with Christopher Synsvoll of the Bureau of Prisons in which he outlined the procedure through which the prisoners whose sentences had been commuted would be designated to other institutions. Mr. Synsvoll reported that the BOP would look at each prisoner individually, including their history of adjustment to the Special Confinement Unit

1

in Terre Haute ("SCU"). The unit team at the SCU would be afforded a chance to provide input. Mr. Synsvoll directed us to provide any additional information that should be considered in the BOP's assessment, including any information on our clients' medical conditions or mental health, context for any disciplinary infractions, and any observations about the client's adjustment to incarceration. Mr. Synsvoll discussed specific institutions that could provide a mental health step-down program, including Allenwood and Atlanta. He asked us to provide information about the physical location of the prisoner's family members so that BOP could identify regions or specific institutions that would facilitate their visits. He also noted that people who had spent a considerable amount of time in the SCU could be considered for placement in medium security more quickly.

6.      On January 14, 2025, I met by video conference with Mr. Synsvoll about Mr. Tipton. Mr. Synsvoll told me that Mr. Tipton was not among the prisoners who had received an initial referral notice to the Administrative Maximum Facility at the United States Penitentiary in Florence, Colorado ("ADX"). Mr. Synsvoll said that the options BOP was considering for Mr. Tipton were across the board United States Penitentiaries (USPs), and that they would attempt to transfer him to an institution within 500 miles of his family. Mr. Synsvoll confirmed that the BOP had designated Mr. Tipton's medical care level at a 2 and his mental health care level at a 1. Mr. Synsvoll noted that Mr. Tipton had

some recent incident reports, but he characterized them as nothing major and typical behavior for guys in a penitentiary. He also noted that Mr. Tipton had come directly to the SCU in 1999. He said that Mr. Tipton would transition to a mainline (i.e., open) population prison and, if he did well, could be stepped down to a medium security prison. Mr. Synsvoll invited me to submit additional context concerning Mr. Tipton's incident reports for inclusion in BOP's review and to identify the geographic region that would put him closest to his family.

7.    On January 16, 2025, I sent an email to Mr. Synsvoll reporting Mr. Tipton's hope that he would be transferred closer to his family in the state of New York and providing additional context for his disciplinary incidents.

8.    On January 20, 2025, President Donald J. Trump issued an executive order directing the Attorney General to evaluate the places of imprisonment and conditions of confinement for the men whose death sentences were commuted by President Biden and "take all lawful and appropriate action to ensure that these offenders are imprisoned in conditions consistent with the monstrosity of their crimes and the threats they pose."

9.    On January 28, 2025, I joined a videoconference with Mr. Synsvoll in which he said that the process for designating the commuted prisoners was now in a "holding pattern" as a result of the Executive Order because the BOP now

needed to present their designation plan to someone in the Office of the Deputy

Attorney General.

10.    On February 5, 2025, the Attorney General issued a memorandum

directing the BOP to "ensure that the conditions of confinement for each of the 37

commuted murderers are consistent with the security risks those inmates present

because of their egregious crimes, criminal histories, and all other relevant

considerations."

11. On February 18, 2025, I had a video conference with Mr. Synsvoll. He

stated that Mr. Tipton would be referred directly into the general population at

ADX. He stated that BOP was aiming to complete the referral process within 60

days, although he did not know if Mr. Tipton would be moved to ADX within that

period. He explained that Mr. Tipton would receive a memo seeking a referral

request to ADX along with a packet identifying his disciplinary history. Mr. Tipton

would then have a hearing, with the hearing officer making a recommendation

afterward. Mr. Tipton would then be referred to ADX. Mr. Synsvoll said that he

had not been told if ADX would be a permanent destination for Mr. Tipton or the

other prisoners whose sentences were commuted. He also reported that the

program can take as little as twenty-seven months but that on average prisoners

need about five years to advance to the transfer phase.

12.     On April 3, 2025, Mr. Tipton telephoned and informed me that he had received a notice scheduling his hearing for referral to transfer to general population at ADX on April 7, 2025. Mr. Tipton read portions of the notice to me over the phone; it said that he was referred because he posed a risk to others and could not be safely housed in the general population of other institutions. It also said that his security level was high because he was a former death row prisoner and said he was a member of a "Security Threat Group" called "Death Row Inmates."

13. On April 7, 2025, Mr. Tipton telephoned and informed me that he had attended his hearing that morning and had within hours received a decision from the hearing officer that recommended his designation to ADX.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 11, 2025.

Gerald W. King, Jr.