# EXHIBIT 23

# DECLARATION OF LINDSEY LAYER

I, Lindsey Layer, declare as follows:

1. I am one of Brandon Basham's attorneys and have been representing him since 2016. After Mr. Basham received a commutation of his death sentence from President Biden and before President Trump's Executive Order, I was initially told by a Bureau of Prisons (BOP) official that my client was excluded from ADX because of his serious mental health needs. After the Executive Order and Attorney General's Memorandum were issued and following meetings with the Attorney General/Deputy Attorney General's office, the BOP official told us that my client would almost certainly be sent to ADX. The following are details of these conversations.

2. I am employed as an Assistant Federal Public Defender for the District of Arizona, where I have worked since 2015.

3. Prior to joining the Federal Public Defender for the District of Arizona, I was a staff attorney at the Virginia Capital Representation Resource Center. I have been practicing law since 2009.

4. On September 30, 2004, a federal jury in South Carolina convicted Mr. Basham and recommended a sentence of death for two counts: carjacking resulting in death and kidnapping resulting in death. On November 2, 2004, the United States District Court sentenced Brandon to death by lethal injection.

5. Our office was appointed to represent Mr. Basham in 2009. Mr. Basham was indigent at that time and remains indigent now.

6. On December 23, 2024, President Joseph R. Biden, Jr. granted executive clemency to Mr. Basham and commuted his death sentence to life imprisonment without the possibility of parole.

7. Mr. Basham is currently housed in the Special Confinement Unit at the Terre Haute Federal Correctional Complex.

8. On January 7, 2025, I attended a meeting for counsel whose clients' sentences had been commuted with Chris Synsvoll, Senior Counsel, Federal Bureau of Prisons. At that meeting, Mr. Synsvoll also described some of the prisons and programs where our clients might be placed. He noted that the prisons at Atlanta and Allenwood had programs for individuals with greater mental health care needs. He also described the various tracks at ADX, such as the

step-down program and the control unit, and described the process of being designated to ADX.

9. Mr. Synsvoll told us that the process for the formerly condemned inmates would be similar to how BOP classifies any inmate. He invited counsel to send him any information that we thought would be important to the classification process.

10. On January 9, 2025, I had a video meeting with Mr. Synsvoll to discuss Mr. Basham's circumstances in particular and where Mr. Basham would be moved to serve out the remainder of his sentence.

11. I informed Mr. Synsvoll that Mr. Basham's mental health status was classified by the BOP as care level 3 and detailed some of the mental health issues Mr. Basham had been dealing with as follows:

> Mr. Basham first began receiving mental health services at the age of seven. By the time he turned 19, Mr. Basham had been treated at no fewer than 13 mental health facilities, and had received diagnoses of, among other things, bipolar disorder, seizure disorder, and attention deficit disorder with intermittent explosive disorder. The crime for which Mr. Basham was sentenced to death occurred just after Mr. Basham's 21st birthday. Mr. Basham also has significant intellectual limitations, including as a result of his mother's drinking and drug use during pregnancy. Mr. Basham had no history of violence prior to the offense for which he was sentenced to death. When this crime occurred, he had attempted suicide four times in the county jail. Mr. Basham had been institutionalized for much of his life, was experiencing severe mental health issues, and had a low IQ, making him gullible and easily influenced.
>
> In the years since his conviction and sentence, Mr. Basham's mental health has continued to decline. Over the last 20 years, Mr. Basham's legal team has periodically had him evaluated by a psychiatrist, Dr. Donna Schwartz Maddox, who first began working with Mr. Basham's trial team in 2003. Her most recent evaluation of Mr. Basham was in 2022. Dr. Schwartz Maddox noted in 2022 that Mr. Basham had "a new onset of systematized persecutory delusions which have not been appreciated in prior evaluations." She further noted, "Because of his persecutory delusions and hallucinations, Mr. Basham is no longer functioning at his baseline level."

    Mr. Basham currently has a mental health classification level of CARE3-MH. As of May 17, 2024, Mr. Basham's diagnoses in his BOP records were listed as: "Adhd: Combined Presentation, F90.2 - Current - Per 2004 Forensic Eval; remains relevant Major Depressive Disorder: Recurrent Episode: With Psychotic Features, F33.3 – Current Antisocial Personality Disorder, F60.2*b – Current."

    Mr. Basham's behavior has also been consistently recorded in BOP records in recent years. A record from July 3, 2024, noted that since 2015 Mr. Basham "has been the subject of six suicide risk assessments, with one placement on suicide watch." The record further noted that "Inmate BASHAM has appeared to have a notable increase in mental health symptoms and significant contacts with psychology services." Specifically, he has frequently been noted to be arguing with himself and yelling in his cell. On December 18, 2024, mental health records indicate that Mr. Basham was continuing to report visual and auditory hallucinations and was observed by staff "to be potentially attending to internal stimuli, including turn his head and talking to himself." Mr. Basham again reported "observing a 'machine taking souls' on his range." On January 8, 2025, Mr. Basham "was observed to be mumbling to himself" and custody staff reported Mr. Basham "'yelling' and 'talking to himself' all throughout the night. Other inmates on his range have also reported this to this writer during rounds."

12. Looking at Mr. Basham's institutional history, Mr. Synsvoll indicated there was a chance Mr. Basham would initially be referred to ADX but that with his mental health diagnoses that would likely not be the case. He said the only way someone at that mental health care level would be moved to ADX was if they could not be managed elsewhere because they were too violent, and in that case they would still have to manage his mental health care at ADX. Mr. Synsvoll said they currently have 11 people at a mental health care level 3 at ADX and they did not currently have the resources for more.

13. Mr. Synsvoll said that Mr. Basham would likely be placed in a secure mental health care program such as Allenwood or Atlanta. Mr. Synsvoll also questioned if Mr. Basham would actually be appropriately classified as care level 4, in which case he would have to go to the Federal Medical Prison in Springfield.

14. We discussed Mr. Basham's current medications, as well as psychiatric evaluations we had done of Mr. Basham in 2017 and 2022 and how our psychiatrist, Dr. Donna Schwartz-Maddox, had recommended certain

medications for Mr. Basham but as far as I knew they had never been prescribed. Mr. Synsvoll mentioned that if there were not enough beds at Allenwood or Atlanta or if BOP decided Mr. Basham was not appropriately medicated, they might send him to Springfield first.

15. On January 10, 2025, I provided Mr. Synsvoll with a memo that not only outlined in greater detail the mental health information set forth in paragraph 11 above but also provided other information relevant to BOP's decisions about where to designate Mr. Basham. I provided Dr. Schwartz-Maddox's 2017 and 2022 reports in support of that memo, in addition to other relevant documents.

16. On January 28, 2025, there was another group meeting with counsel for formerly condemned inmates and Mr. Synsvoll. At that meeting Mr. Synsvoll informed counsel that, as a result of the new executive order from President Donald Trump, BOP's determinations for where to redesignate those who received commutations had to be approved by the Deputy Attorney General. He also informed counsel that all of the formerly condemned inmates had received notice that they were being assessed for placement at ADX.

17. On February 20, 2025, I had another meeting with Mr. Synsvoll to discuss Mr. Basham's reclassification. At that time Mr. Synsvoll told me that everyone who had their sentence commuted had been referred to ADX, with the exception of two individuals who were already housed in a medical unit. He said that everyone would be referred to ADX general population. He also explained some of the process of how referrals work, the hearing that would take place, and the opportunity to appeal.

18. Mr. Synsvoll said that Mr. Basham was initially precluded from ADX because of his mental health care level, but that was no longer the case. He said there would still need to be found to be extraordinary security concerns to place him at ADX and that they would be meeting about people in Mr. Basham's situation the following week.

Pursuant to 28 U.S.C. § 1746, I declare under penalty for perjury that the foregoing is true and correct to the best of my knowledge and recollection.

Executed this 7th day of April 2025.

Lindsey Layer
Name (Printed)

[Signature]
Signature

Lafayette, CO
City, State