# EXHIBIT 27

## DECLARATION OF JASON MOONEY

I, Jason Mooney, do hereby attest that the following is correct to the best of my knowledge:

1. On March 10, 2009, **Mr. Daniel A. Troya, Reg. No. 75817-004**, was convicted in the United States District Court for the Southern District of Florida. Case No. 9:06-cr-80700-003, ECF No. 792. On May 13, 2009, he was sentenced as follows:

| Count | Title | Sentence |
|---|---|---|
| 1 | 21 U.S.C. § 846 | Life |
| 3 | 18 U.S.C. § 922(g)(1)-(2) | 10 years |
| 5 | 18 U.S.C. § 2119(3) | 5 years |
| 6 | 18 U.S.C. § 2119(2)-(3) | Life w/o poss. release |
| 7 | 18 U.S.C. §924(j)(1)-(2) | Death |
| 8 | 18 U.S.C. §924(j)(1)-(2) | Death |
| 9 | 18 U.S.C. §924(j)(1)-(2) | Life w/o poss. release |
| 10 | 18 U.S.C. §924(j)(1)-(2) | Life w/o poss. release |
| 13 | 18 U.S.C. § 2; 21 U.S.C. § 841(a)(1) | Life |
| 14 | 18 U.S.C. § 922(g)(1); 924(a)(2) | 10 years |
| 15 | 18 U.S.C. § 924(c)(1)(A)(I) | 5 years |

ECF Nos. 500, 792.

2. The United States Court of Appeals for the Eleventh Circuit affirmed Mr. Troya's convictions and sentences in his direct appeal. *United States v. Troya*, 733 F.3d 1125 (11th Cir. 2013), and the United States Supreme Court denied Mr. Troya's petition for writ of certiorari. *Troya v. United States*, 575 U.S. 995 (2015).

3. On April 8, 2015, the trial court appointed Steven H. Malone and the Office of the Federal Defender for the Middle District of Florida (FDO) to represent Mr. Troya in his initial postconviction proceedings under 28 U.S.C. § 2255. ECF No. 1148. Mr. Troya was declared indigent and remains indigent. Along with Assistant Federal Defender Leor Veleanu, I have been assigned by the FDO to Mr. Troya's case as a Reading & Writing Specialist. I am a member in good standing with the Florida Bar (Bar No. 0125079).

4. Mr. Troya timely filed his Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. Case No. 9:16-cv-80700, ECF. No. 1. These proceedings remain pending.

5. On December 23, 2024, President Biden commuted Mr. Troya's death sentences

(Counts 7 and 8) to sentences of life without the possibility of parole.

6. On January 13, 2025, I met with Bureau of Prisons (BOP) attorney Christopher Synsvoll via MS Teams from about 12:30 p.m. to 1:00 p.m. Mr. Troya's direct appeal counsel, Sean Bolser, also joined the meeting.

7. During this meeting, Mr. Synsvoll explained that the BOP would be deciding where Mr. Troya should be redesignated. Given Mr. Troya's youth at the time of his offense; his "pretty good" incarceration record; and some regular and recent (i.e., 2022) disciplinary infractions, Mr. Synsvoll described Mr. Troya as firmly in the "maybe" category" of those for whom the BOP was weighing designation to either ADX (beginning at a latter stage of the step-down process) or immediate designation to a United States Penitentiary (USP). Mr. Synsvoll was interested in learning more about Mr. Troya as an individual, including the location of his family and his level of interest in participating in available BOP programs.

8. Later that day, I emailed Mr. Synsvoll a letter explaining why I believed it was in the best interests of both Mr. Troya and the BOP to redesignate him to a Florida United States Penitentiary (USP). In that letter I highlighted Mr. Troya's strong family ties, educational achievements, self-improvement activities, work as an orderly, ongoing postconviction litigation in Florida,, the location of his legal team, and his deep commitment to his faith.

9. On January 28, 2025, at 4:00 p.m. Eastern time, Mr. Synsvoll met via Zoom with a group of counsel for the President Biden commutees for about one hour.[1] He briefed us on the impact of President Trump's Executive Order on our clients' redesignations. He explained that from his perspective, nothing had changed with the BOP designation team's process or their recommendation that the majority of the commutees should be sent to a USP. But as a result of the Executive Order, Mr. Synsvoll now expected the BOP's recommendation would have to be approved by the Office of the Deputy Attorney General. At this point, an Attorney General had not yet been Senate-confirmed and Mr. Synsvoll did not know whether the Attorney General would be participating in the decision of where to designate the commutees. Mr. Synsvoll stated that the BOP designation team had identified twelve men for placement at ADX, and that for the remainder it would be reasonable to assume redesignation to a USP rather than an initial redesignation to an FCI.

10. During this meeting, Mr. Synsvoll also discussed an incident from the previous week in which all commutees received notices that they would receive psychological

---

[1] This was the second such meeting. I was not present at the first meeting on January 7, 2025.

2

assessments for referrals to ADX. This action, he explained, was an error made at the USP Terre Haute-level and not by the BOP designation team. He reiterated that no ADX referrals had been made yet.

11. On February 28, 2025, I met with Mr. Synsvoll via MS Teams from about 1:15 p.m. to 2:00 p.m. Mr. Bolser also joined the meeting. During this meeting, Mr. Synsvoll confirmed that prior to President Trump's Executive Order, the BOP had decided to redesignate Mr. Troya to a U.S. Penitentiary. Post-Executive Order, Mr. Synsvoll stated that Mr. Troya should expect designation to ADX. Mr. Synsvoll then provided us with logistical information about ADX (e.g., how and when to schedule a legal visit at ADX).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and recollection.

Executed on March 28, 2015.

Jason P. Mooney, Esq.
Attorney, Capital Habeas Unit
Office of the Federal Defender
Middle District of Florida

3