# EXHIBIT 31

## DECLARATION OF F. ITALIA PATTI PURSUANT TO 28 U.S.C. § 1746

1. I, F. Italia Patti, am an attorney at Indiana Federal Community Defenders (IFCD). I am one of the attorneys who represents Jurijus Kadamovas in post-conviction proceedings. Mr. Kadamovas's death sentence was commuted by President Biden on December 23, 2024. Following the commutation but prior to the issuance of President Trump's Executive Order regarding the commutees, I was told by a Bureau of Prisons (BOP) official that Mr. Kadamovas would be redesignated to another federal prison pursuant to BOP policy and that he was not being considered for placement at ADX. After the Executive Order and Attorney General's memorandum were issued, and after meetings with representatives of the Attorney General's office and the Deputy Attorney General's office, the BOP official told us that (with the possible exception of the individuals already in federal medical centers) everyone whose death sentence had been commuted would by default be sent to ADX. Details of those conversations are contained in the paragraphs below.

2. Mr. Kadamovas is indigent. Post-conviction counsel were appointed pursuant to 18 U.S.C. § 3599(a)(2).

3. Mr. Kadamovas was convicted in the Central District of California on January 16, 2007, on all six counts of the superseding indictment: conspiracy to take hostages, 18 U.S.C. § 1203 (Count 1); hostage taking resulting in death, 18 U.S.C. § 1203 (Counts 2, 3, and 4); conspiracy to launder monetary instruments, 18 U.S.C. § 1956(h) (Count 5); conspiracy to escape, 18 U.S.C. § 371 (Count 6). The jury returned its penalty-phase verdict on February 13, 2007, concluding that Mr. Kadamovas should receive the death penalty. Mr. Kadamovas was formally sentenced to death on March 12, 2007. Mr. Kadamovas filed a § 2255 motion on October 3, 2023, which remains pending on the Central District of California. His death sentence was commuted on December 23, 2024.

4. On January 7, 2025, I, along with co-counsel Angie Elleman and Jean Giles, met with BOP Attorney Chris Synsvoll by videoconference. During that meeting, Mr. Synsvoll confirmed that Mr. Kadamovas was not being considered for placement at ADX. My co-counsel and I expressed the belief that placement at a secure mental health stepdown unit, such as the program at USP Allenwood, would be most appropriate for Mr. Kadamovas. Mr. Synsvoll instructed us to send him material that would help the BOP make an informed decision about Mr. Kadamovas' placement.

5. Following this meeting, also on January 7, 2025, my co-counsel and I attended a meeting with Mr. Synsvoll open to all attorneys for individuals whose death sentences had been commuted. Mr. Synvoll's comments at that meeting mirrored the comments he made in the meeting with co-counsel and me. Mr. Synsvoll explained that redesignation decisions would be made according to the BOP's standard policy; that is, BOP officials would evaluate each person individually, taking into account medical conditions, mental health conditions, and disciplinary history. Mr. Synsvoll invited the attorneys present at that meeting to send him information addressing those issues, so that the BOP officials tasked with making redesignation decisions

could make informed decisions. Mr. Synsvoll emphasized that our clients were not automatically being sent to ADX and explained that placement options included federal medical centers, mental health step-down programs, and USPs.

      6. On January 10, 2025, I emailed Mr. Synsvoll the materials we had compiled that we believed would help the BOP make an informed decision about Mr. Kadamovas' placement. We explained that Mr. Kadamovas has chronic medical conditions. He suffers from Crohn's disease and requires regular medication and gastroenterological consultations. He also has Asthma, which has been difficult to control at times due to gassing of inmates in the SHU, directly below the SCU. He has eczema. He requires a CPAP machine for sleep. He suffers from joint pain, which sometimes is severe enough to affect his mobility. We noted that, although he is currently a Medical Care Level 2 inmate, he should be classified as a Care Level 3 inmate because his chronic conditions are poorly controlled. We also noted that the BOP has diagnosed Mr. Kadamovas with a variety of depressive disorders since at least 2017. In 2022, his Care Level was changed from MH Care Level 1 to MH Care Level 2. He has been treated by psychotropic medications for depression since at least 2017, usually with medications that treat both depression and anxiety. We pointed out that, according to BOP's assessments, as reflected in his Individual Needs Plan – Program Review, Mr. Kadamovas has a low risk of recidivism. We also noted our own observations of Mr. Kadamovas' depressive episodes and anxiety, and our belief that he has not coped well with the isolation of the SCU. Yet, despite Mr. Kadamovas' mental health challenges, he has been able to channel his energies into his art and positive endeavors. We shared our observation that Mr. Kadamovas is a talented artist and kind-hearted person. We suggested that Mr. Kadamovas would best be served by the Secure Mental Health Step-Down Program (SMH-SDP) or the Transitional Care Unit (TCU), both at USP Allenwood.

      7. On January 28, 2025, my co-counsel and I attended a meeting with Mr. Synsvoll open to all attorneys for individuals whose death sentences had been commuted. Prior to this meeting, and following President Trump's Executive Order, Mr. Kadamovas had, for the first time, received paperwork suggesting he was being considered for ADX. Mr. Synsvoll informed us that the staff at the Special Confinement Unit (death row) had gotten ahead of themselves and distributed paperwork about ADX to all the individuals whose death sentences were commuted on their own initiative, not because someone higher up within the BOP had directed them to do so. Mr. Synsvoll also reassured us that the only change in the process since the January 7 meeting was that after BOP officials made individualized placement decisions, as discussed on January 7, the placement decisions now needed to be submitted to the Attorney General or Deputy Attorney General for approval.

      8. In a subsequent conversation with Mr. Synsvoll, I learned that the BOP committee members had been informed that the President and Attorney General's office were indicating that everyone needed to be referred to ADX.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and recollection. Executed on March 27, 2025.

Florence Italia Patti

3