# EXHIBIT 33

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REJON TAYLOR, *et al.*,<br><br>     Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>     Defendants. | |

### DECLARATION OF REJON TAYLOR

I, Rejon Taylor, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the following is true and correct:

1. I am over the age of 21 and make the following statements based on my own personal knowledge.

2. On April 3, 2025, my unit counselor at USP-Terre Haute gave me a "Notice of hearing on Referral for Transfer to ADX Florence General Population." The notice said that my hearing would be "conducted via videoconference" on Monday, April 7, 2025, at 9:00 am Central Time, 10:00 am Eastern Time.

3. The notice gave three reasons why I am being referred for placement in the ADX-GP. It said that my placement in other correctional facilities creates a risk to institutional security and good order or poses a risk to the safety of other people in the prison. It also said that my status, either before or after incarceration, meant that I cannot be safely housed in GP in another institution. Finally, it said that I have notoriety such that my well-being would be jeopardized in a less secure setting.

4. The notice clearly stated that I have had clear conduct during my time in the BOP, meaning that I have not been found to have committed any rules violations.

5. My unit counselor told me I could mark the notice with inaccuracies, which I did in permanent blue marker.

6. The notice had a place for me to sign to acknowledge that I received it. That acknowledgment also said that I had already "received a copy of the Administrative Procedures for Transfer to the ADX-GP," which I had not received. Instead, my unit counselor gave me a program statement for the Control Unit, which is not the same as ADX-GP. So, when I signed the notice, I made a bold blue note that said: "Signature acknowledges that I received a Copy of Notice of Hearing, and that I disagree with or do not understand the underlined parts."

7. I told my unit counselor that what she had given us did not include the correct administrative procedures. She told me she would look into it, and, an hour later, she admitted to me that I was right and that I had not received a copy of the Administrative Procedures for Transfer to ADX-GP. She later gave me a 2012 memo titled, "ADX GENERAL POPULATION REFERRAL PROCEDURES."

8. I attended my ADX hearing on April 7, 2025.

9. BOP staff took me into one of the legal rooms, where I met with the hearing officer via WebEx.

10. The hearing officer was a white, bald male, probably in his mid-50s, and he had a Kansas City Chiefs banner on his office wall. He introduced himself, blew his nose, and commented on his allergies.

11. He started the hearing by reading the procedures, and then he asked me to tell him about myself.

12. I told him that I had everything that I wanted to say in writing, including statements from BOP staff, current and former, as well as my own written statement.

13. Hearing that, he said that he had to ask me some questions as part of the hearing and proceeded to ask me if I was suicidal and if I would be suicidal if transferred to ADX. I told him I am not suicidal, but that I didn't know how I would feel at ADX. I told him I did know that if I were placed at ADX, and my communications with the outside world were restricted, it would adversely impact me. My connection to the outside world is my lifeline, my source of strength, my motivation for survival.

14. He then asked about my family, and I told him that my mother died, but my dad is alive. I told him that my dad doesn't come to visit me, though, because he can't bear seeing me in this situation.

15. After a little bit more conversation, small talk mostly, I told him that I knew that he's just doing his job, that I suspect he's been given a directive to send me to ADX, and that this process is just a foregone conclusion. He responded by saying that he's not the decision-maker and he only gives his recommendation.

16. He told me that he's been doing this for a while, that he does mostly all the recommendations for people being considered for the Control Unit, but I'm not being referred to the Control Unit.

17. Throughout the conversation, he listened and took notes. Just two hours later, I received his recommendation that I be sent to ADX.

18. I immediately wondered if he found it difficult to be a part of this sham. He's been doing this too long to think it is not a sham. He must know that most of us do not require ADX placement.

3

19. Over the course of April 6 and 7, I watched as ten of us on death row who got commutations from President Biden went to ADX referral hearings, five on each day. We all received our respective Hearing Administrator's Report and recommendation for ADX within a few hours after our hearings.

20. All of us saw the same placement criteria listed to support our placement in the ADX:

   a. The inmate's placement in other correctional facilities creates a risk to institutional security and good order or poses a risk to the safety of staff, inmates, others, or public safety.

   b. As a result of the inmate's status, either before or after incarceration, the inmate may not be safely housed in the general population of another institution.

   c. The inmate has notoriety to the extent that the inmate's well-being would be jeopardized in a less secure setting.

21. All of us also saw the same general rationale underlying our ADX recommendation. Mine reads: "Based on the above information provide, inmate TAYLOR meets the criteria for ADX GP placement. The Hearing Administrator believes inmate TAYLOR clearly presents management concerns which cannot adequately be met in an open population institution. Inmate TAYLOR was sentenced to Death due to serious nature of his criminal convictions. Although he was granted Executive Clemency from the President of the United States, changing his sentence from Death to a sentence of Life, this does not negate his serious criminal convictions and his inability to safely remain at any general population setting. His lengthy record of being housed in solitary confinement would show his inability to safely be housed at any general population setting. The Hearing Administrator determined a threat is present if inmate TAYLOR were to remain at

any general population (GP) facility in the Bureau of Prisons (BOP). Inmate TAYLOR's criminal record requires him to be housed in a facility to ensure the ultimate control and supervision afforded by the Federal Bureau of Prisons. Inmate TAYLOR is recommended for placement in the ADX GP in Florence, Colorado."

22. The Hearing Administrator's report also contained some inaccuracies in its recitation of my verbal statements at the hearing. These include:

   a. Repeated statements that I've been incarcerated for 10 years when I have in fact been incarcerated for much longer—for almost 22 years, with almost 16 of those at USP-Terre Haute. I never said at my hearing that I've been incarcerated for 10 years. It's not possible that I slipped up and got this wrong. Every person locked up knows how long they've been incarcerated. We're doing time, and so we know time. We know the years.

   b. That I have "tried" to rehabilitate myself. I have matured and rehabilitated my thinking—I haven't just "tried" to do so. I did not use the word "tried" when I described my successful rehabilitation.

   c. A statement that said: "Looking back at the person I was then, to the person I am today, I know I would not do the same things. I would not end up here." I made no such statement, although I agree with it.

   d. And a statement that I could not handle seeing my dad if he were to visit me. I *never* said anything to suggest that I couldn't handle seeing my dad. My dad is the one who can't bear seeing me here.

5

23. The hearing administrator's report also indicated that I am in the Security Threat Group (STG) "Death Row Inmate," which doesn't make sense to me because I am no longer on death row, and, when I was, I did not have this STG in my file.

24. The hearing administrator's report also included instructions about the right to appeal the decision even though we haven't received a final designation from BOP headquarters.

25. I know this whole ADX process is a sham. We all know it. But we can't help ourselves in hoping that we will somehow convince the Hearing Administrator that the referral is unwarranted. I have only six custody/security points, which, if not for my sentence length, would make me eligible for placement at one of the lowest security facilities in the BOP. But it's a foregone conclusion that we all will be approved for ADX placement. I don't know what's going to happen to me, or my community here, in the next couple of weeks.

Executed this _14_ day of April, 2025, in Terre Haute, Indiana.

_____
Rejon Taylor