# EXHIBIT 34

## DECLARATION OF ALEJANDRO VILLASEÑOR

I, Alejandro Villaseñor, declare as follows:

1. I am an investigator with the Office of the Federal Public Defender for the Central District of California, and am assigned to the case of Iouri Mikhel, whose death sentence was commuted by President Biden on December 23, 2024. After the commutation but prior to President Trump's Executive Order, I was initially told by a Bureau of Prisons (BOP) official that Mr. Mikhel was not on the list of people that BOP was referring for placement at ADX. After the Executive Order and Attorney General's Memorandum were issued, and after BOP officials' meetings with representatives of the Attorney General/Deputy Attorney General's office, the BOP official told us we should now expect that Mr. Mikhel would be sent to ADX. Below are details of those conversations.

2. Mr. Mikhel was charged in U.S. District Court Central District of California in case number 2:02-cr-00220-MCS, with hostage-taking resulting in death and conspiracy to take hostages resulting in death (18 U.S.C. § 1203); conspiracy to launder monetary instruments (18 U.S.C. § 1956(h)); and conspiracy to escape from custody (18 U.S.C. § 371), with additional criminal forfeiture counts (U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853, and 28 U.S.C. § 2461 (c)). On January 17, 2007, the jury reached a guilty verdict on all counts. On February 13, 2007, the jury returned a death verdict for Mr. Mikhel. Mr. Mikhel would ultimately be sentenced to death on March 12, 2007.

3. My office filed its notice of appearance on Mr. Mikhel's case on February 9, 2009, replacing trial counsel who had been appointed by the trial court after the district court found Mr. Mikhel to be indigent. Mr. Mikhel remains indigent.

1


Initials

4. On October 5, 2023, a Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 was filed by my office on behalf of Mr. Mikhel in case number 2:23-cv-08403-MCS.

5. On December 23, 2024, President Biden granted clemency to 37 of the 40 people on federal death row, including Mr. Mikhel. On January 6, 2025, "The Executive Grant of Clemency" was filed as Document 2505 in Mr. Mikhel's docket for case 2:02-cr-00220-MCS.

6. On January 9, 2025, our office sent, via email, a letter to Mr. Chris Synsvoll regarding the designation of Mr. Mikhel and offered our assistance to facilitate an appropriate designation for him. In this letter we briefly address Mr. Mikhel's mental health and possible appropriate housing locations with the appropriate programs for Mr. Mikhel, and we requested a follow up phone conversation with Mr. Synsvoll.

7. On February 3, 2025, the government filed a joint status report on behalf of the parties in case number 2:23-cv-08403-MCS. In it, the parties informed the Court they believed it was appropriate for the government to respond to Mr. Mikhel's 2255 petition as filed, identifying in its response those claims that are no longer at issue because they pertain to the death penalty aspect of the case. Mr. Mikhel can then file his reply.

8. On January 14, 2025, I was part of a Teams video conference call with Mr. Chris Synsvoll, Supervisory Attorney at Federal Bureau of Prisons in Colorado, regarding Mr. Mikhel's transfer from federal death row, located in USP Terre Haute in the Special Confinement Unit ("SCU"). The following was discussed.

9. Mr. Synsvoll informed us that no decisions about where Mr. Mikhel would be housed had been made yet. He represented that twelve individuals received notice they would be evaluated for placement at USP Florence ADMAX ("ADX"); Mr. Mikhel was not one of them. Mr. Synsvoll stated, that generally speaking, prisoners leaving the SCU could be eligible for

Initials

various programs, including one that Mr. Mikhel was interested in, the Life Connections program at USP-Terre Haute, Indiana. According to Mr. Synsvoll, nothing in Mr. Mikhel's file made him ineligible to participate in the Life Connections program. Furthermore, Mr. Synsvoll told us that the SCU unit team had already identified Mr. Mikhel as someone who could be eligible for the Life Connections Program.

10. Mr. Synsvoll informed us that at this time, the Bureau of Prisons ("BOP") would convene an executive committee meeting where placement requests would be considered, and invited us to keep in contact with him throughout the transfer process.

11. On January 20, 2025, President Trump signed an Executive Order titled "Restoring the Death Penalty and Protecting Public Safety."

12. On February 20, 2025, subsequent to the Executive Order, I participated in another Teams video conference call with Mr. Synsvoll regarding Mr. Mikhel's transfer from federal death row. At this meeting, Mr. Synsvoll informed us that after the Executive Order, all the 37 inmates who had received a commutation from President Biden, except for those who would receive medical exemptions, were now going to ADX. According to Mr. Synsvoll, BOP was now referring Mr. Mikhel to ADX.

13. According to Mr. Synsvoll, in order to effectuate the transfer to ADX, BOP was compiling a cover memo listing convictions; disciplinary history; a progress report (which is regularly done); medical screening; and mental health history. Mr. Synsvoll said this package would go to Mr. Matabusan [sic] for his review. Since I did not ask Mr. Synsvoll to spell the name out, I believe he meant Mr. Matevousian who is the Regional Director of the North Central Region, according to the BOP website. After his review, Mr. Matevousian would send it to Mr. Rick Stover. After Mr. Stover's review, the hearing administrator would prepare a notice of hearing. Mr. Mikhel should get a notice of the hearing at least 24 hours prior to the hearing.

3

Initials

According to Mr. Synsvoll, hearings of this type are usually done by video; however, since there were to be 34 hearings, Mr. Synsvoll was not sure how they would be conducted. After the hearing, the Hearing Administrator would issue a report. Mr. Mikhel would get a copy of the report, as would Mr. Shane Salem, who would review the report. If Mr. Salem concurred, then he will give a final decision. According to Mr. Synsvoll, Mr. Mikhel could then appeal directly to the General Counsel without engaging with the regular appeals process, even if he did not attend the hearing. Mr. Synsvoll said the direct appeal to general counsel did not need to be in any specific form; it could be a handwritten letter.

14. Mr. Synsvoll informed us that it has been BOP's practice not to move inmates until the completion of their appeal of the decision designating them to ADX. Mr. Synsvoll said that once Mr. Mikhel gets to ADX he can continue challenging the placement, but has to go through the regular administrative appeal process.

15. Mr. Synsvoll said that with the Executive Order, recent statements by the Attorney General, and all the rhetoric that is going around, Mr. Mikhel may land in the first step, high security within ADX. Lastly, Mr. Synsvoll informed us he is transitioning to a new position but will continue to be involved with relocating the death row inmates who received commutations.

I declare under penalty of perjury under the laws of the United States of America, including 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge and recollection.

DATED: 3/26/2025

ALEJANDRO VILLASEÑOR

4

Initials