# EXHIBIT 35

## Declaration of Peter Konrad Williams
## Pursuant to 28 U.S.C. § 1746

I, Peter Konrad Williams, declare as follows:

1. I am an attorney with the Federal Community Defender Office for the Eastern District of Pennsylvania. My office was appointed because Mr. Fulks was indigent. He remains indigent. Katherine Thompson, who is another attorney in the Federal Community Defender Office for the Eastern District of Pennsylvania, and I represent Chadrick Evan Fulks.

2. On May 7, 2004, Mr. Fulks pled guilty to carjacking resulting in death, kidnapping resulting in death, and related charges. Mr. Fulks was sentenced to death on June 30, 2004 in the United States District Court for the District of South Carolina after a contested penalty phase. On December 23, 2024, Mr. Fulks was granted clemency and his death sentence was commuted to a sentence of life imprisonment without parole.

3. On January 9, 2025, Ms. Thompson, paralegal Sara McLachlan, and I met with Bureau of Prisons ("BOP") attorney Christopher Synsvoll by Zoom so that we could discuss where Mr. Fulks would be placed after he was transitioned away from the Special Confinement Unit ("death row") in USP-Terre Haute. During this conversation, we discussed Mr. Fulks's serious medical and mental health needs and emphasized that we believed Mr. Fulks should be placed in a facility that could address his medical needs as that was his most pressing concern.

We also explained that Mr. Fulks should be recategorized as Care Level 3 because of these issues. Mr. Synsvoll requested that we provide him with a written submission outlining Mr. Fulks's medical and mental health issues and discussing any other information we believed to be relevant to his placement.

4. On January 10, 2025, we complied with Mr. Synsvoll's request and provided him with a cover letter and memorandum summarizing these issues. In this submission, we outlined Mr. Fulks's medical issues, including a neurogenic bladder, degenerative disc disease, and chronic kidney disease. We discussed the fact that his neurogenic bladder led to the installation of a suprapubic catheter, which is prone to infection and must be replaced frequently. We also stated that Mr. Fulks was born with a Fetal Alcohol Spectrum Disorder ("FASD"), had been diagnosed with intellectual disability, and had longstanding issues with anxiety and depression stemming from his FASD. We provided Mr. Synsvoll with the report of psychologist Natalie Novick-Brown, Ph.D., as well as an excerpt of Dr. Novick-Brown's report to facilitate review of relevant information not contained in Mr. Fulks's prison records. And we stated that treatment for Mr. Fulks's medical and mental health issues, as well as a placement that would permit his loved ones to visit on a regular basis, would ensure a positive prison adjustment. We reiterated our request that Mr. Fulks be recategorized as Care Level 3 and asked that he be placed at a Federal Medical Center.

5. At no point in the January 9, 2025 Zoom meeting or by email after that did Mr. Synsvoll indicate that Mr. Fulks would be referred for placement in USP-Florence ADMAX ("ADX") or state that our request that Mr. Fulks be placed at a Federal Medical Center was not a viable option.

6. On January 20, 2025, President Donald J. Trump issued an executive order that, inter alia, instructed the Attorney General to "evaluate the places of imprisonment and conditions of confinement" for each of the inmates whose death sentences had been commuted and instructed her to "take all lawful and appropriate action to ensure that these offenders are imprisoned in conditions consistent with the monstrosity of the crimes and the threats they pose."

7. Shortly after the issuance of this executive order and before January 28, 2025, I became aware that all death row inmates in USP-Terre Haute who had received clemency, including Mr. Fulks, had been notified that they were being referred for potential placement in ADX. Prior to the executive order, Mr. Fulks had not received a referral for potential placement in ADX and Mr. Synsvoll did not indicate that such a referral would be forthcoming.

8. On January 28, 2025, I attended a group Zoom meeting with Mr. Synsvoll and other members of defense teams representing formerly death-sentenced federal inmates. On that Zoom meeting, Mr. Synsvoll stated that the ADX referrals described in the preceding paragraph had been issued in error. Per

3

Mr. Synsvoll, the administration at Terre Haute had received President Trump's January 20, 2025 executive order and made referrals to ADX without any directive from central BOP administration. Mr. Synsvoll further stated that there was a significantly smaller number of inmates who had been recommended for referral to ADX before the executive order. Per Mr. Synsvoll, the defense teams for that smaller group of inmates had already been informed about the recommendations. For the rest of the inmates—meaning the inmates who had received ADX referrals after January 20, 2025—Mr. Synsvoll stated that he and his team would make placement proposals to the Deputy Attorney General later in the upcoming week.

9. On February 5, 2025, Attorney General Pamela J. Bondi issued a memorandum relating to the pursuit of the federal death penalty.

10. At some point after the January 28, 2025 Zoom meeting, I became aware that Mr. Fulks was issued a second notification that he was being referred to ADX.

11. On March 11, 2025, Ms. Thompson, Ms. McLachlan, and I met with Mr. Synsvoll by Zoom again. During this meeting, I indicated that the BOP had gone from considering non-ADX placements for Mr. Fulks to giving Mr. Fulks an ADX referral along with every other former member of federal death row who had not been included in the first round of ADX referrals. I asked Mr. Synsvoll what the reason was for the change in the BOP's position.

12. In response to my question, Mr. Synsvoll stated that the position changed because of direct input from representatives for the Office of the Attorney General. Mr. Synsvoll further stated that the aforementioned executive order and Department of Justice memo were referred to multiple times during this conversation. We asked Mr. Synsvoll for the factors that served as the basis for Mr. Fulks's ADX referral. He provided us with an October 15, 2012 memorandum from Assistant Director Blake Davis outlining the procedure employed by the BOP when making an ADX referral, and indicated that he would provide us with a list of the specific factors that served as the basis for Mr. Fulks's referral. We have not yet received the list of factors that are specific to Mr. Fulks.

13. Mr. Synsvoll also stated that, prior to receiving direct input from representatives of the Office of the Attorney General, no final decision had been made as to where Mr. Fulks would be placed or whether an ADX referral would be made. Mr. Synsvoll indicated that he and other BOP staff were contemplating non-ADX placements for Mr. Fulks.

14. Also during the March 11, 2025 Zoom meeting, Ms. Thompson asked whether ADX would be capable of accommodating Mr. Fulks's medical needs if he were to be reclassified as requiring Care Level 3 medical attention. Mr. Synsvoll replied that ADX is not designated as a Care Level 3 facility.

15. I declare, under penalty of perjury and pursuant to 28 U.S.C. § 1746, to the best of my knowledge and recollection that the foregoing is true and correct.

_____
Peter Williams
Assistant Federal Defender

Dated: March 27, 2025