# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISRICT OF COLUMBIA

| | |
|---|---|
| REJON TAYLOR, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:25-cv-01161-TJK |
| ) | |
| DONALD J. TRUMP, *et al.*, ) | |
| in their official capacities, ) | |
| ) | |
| Defendants. ) | |

**DECLARATION OF SHANE SALEM**
ASSISTANT DIRECTOR, CORRECTIONAL PROGRAMS DIVISION
FEDERAL BUREAU OF PRISONS

In accordance with the provisions of 28 U.S.C. § 1746, I, Shane Salem, state as follows, under penalty of perjury, pertinent to the above-styled and numbered cause:

1. I am currently employed by the Federal Bureau of Prisons ("BOP") as Assistant Director, Correctional Programs Division ("CPD"), located at BOP's Central Office in Washington, D.C. I have held this position since October 2024 and have been employed with the BOP since May 2005. The statements set forth in this Declaration are based on my personal knowledge and review of documents and information provided to me in my official duties.

2. CPD provides national policy direction and daily operational oversight of institution correctional services within the BOP. In my role as Assistant Director, I am responsible for a wide variety of areas, including designations and sentence computation. I am additionally responsible for the Witness Security and Victim-Witness Programs, security and emergency planning, offender transportation, the Sex Offender Certification Review Branch, and unit and case management operations. I also direct BOP's intelligence efforts through coordination with law

1

enforcement agencies around the country.

**Plaintiffs**

3. I am aware that Plaintiffs filed the above-referenced lawsuit on April 16, 2025, in which they seek declaratory and injunctive relief and, in relevant part, allege that their transfer to the United States Penitentiary-Administrative Maximum in Florence, Colorado ("ADX Florence") would violate various provisions of the U.S. Constitution and the Administrative Procedure Act.

4. Plaintiffs are twenty-one inmates currently housed in the Special Confinement Unit ("SCU") at the Federal Correctional Complex in Terre Haute, Indiana ("FCC Terre Haute"). The SCU was established and designed with the mission to provide a humane, safe, and secure environment for individuals who have received a sentence of death in the federal court system.

5. Plaintiffs have each received a sentence of death in the federal court system and have therefore been housed in the FCC Terre Haute SCU.

6. On December 23, 2024, BOP received commutation orders for thirty-seven inmates, including the twenty-one Plaintiffs, who had been sentenced to death.

7. Given the SCU's mission to house inmates with a sentence of death, BOP has been in the process of redesignating SCU inmates whose sentences have been commuted to life without the possibility of parole. This includes the twenty-one Plaintiffs.

8. Insofar as the December 23, 2024, orders commuted the death sentences of essentially all federal inmates then on death row, the redesignation process resulting from the commutation orders has been unprecedented in scope and complexity. To determine where to redesignate the thirty-seven inmates, under longstanding BOP policy,[1] BOP must consider each

---

[1] BOP Program Statement 5100.08, *as amended*, "Inmate Security Designation and Custody Classification" ("PS 5100.08").

2

individual's characteristics, disciplinary and other institutional history, and medical and mental health needs (if any).

**The Process for Designations to ADX**

9. Per PS 5100.08, BOP institutions are classified into one of five security levels: Minimum, Low, Medium, High, and Administrative. The classifications are based on the level of security and staff supervision the institution can provide, and BOP inmates are similarly classified based on, among other things, the level of security and supervision the inmate requires.

10. ADX Florence was established and designed with the mission to safely house the BOP's most disruptive, dangerous, or high-profile inmates, while providing these inmates with opportunities to demonstrate improved behavior and the ability, motivation, and willingness to integrate into an open inmate population (i.e., a United States Penitentiary with an open yard and shared cells). It is the most secure prison in the federal system and employs unique security and control procedures to ensure the safety of staff, inmates, and visitors.  ADX placement does not constitute punishment and does not by itself increase the length of incarceration.

11. ADX uses a stratified system of housing to provide inmates with the incentives to adhere to the standards of conduct associated with a high-security/maximum-custody program. This stratified system employs a phased housing unit, or privilege system, also known as the "Step-Down" program. As inmates demonstrate periods of clear conduct and positive institution adjustment, they have the potential to progress from the more secure areas of the facility to less secure areas, and—in some cases—they may eventually move to other Bureau facilities. The ADX currently has several housing units, including a Control Unit, five General Population ("GP") Units, two Special Security Units, Intermediate Step-Down and Transitional Units, the High Security Adult Alternative Program Unit, and the Pre-Release Unit.

12. BOP Program Statement 5100.08, Chapter 7, provides the process for redesignation (transfer from one institution to another) for BOP inmates generally. Program Statement 5100.08 explains in greater detail, but after review and approval by the Unit Team, a transfer request is submitted to the BOP's Designation and Sentence Computation Center ("DSCC"). DSCC then approves or denies the request.

13. Given the unique mission of ADX Florence, Program Statement 5100.08 also references a process specific to redesignations there. The particular procedures for designating an inmate to ADX Florence are detailed in a 2012 memorandum from Blake Davis, former BOP Assistant Director for the Correctional Programs Division. I refer to this memorandum as the "ADX Referral Memo," and it is available at ECF No. 2-9.

14. As detailed in the ADX Referral Memo, and discussed in greater detail in later paragraphs, the BOP's DSCC, which is under CPD, is generally responsible for designating the facility at which an inmate is housed, to include processing referrals for an inmate to be housed in the GP at ADX Florence. The decision to designate or redesignate inmates to ADX-GP is at my discretion in my official capacity as the Assistant Director, CPD, Central Office.

15. The process detailed in the ADX Referral Memo for redesignating current BOP inmates (which Plaintiffs are) to ADX-GP is as follows:

    A. **Institution Staff Initiation**: Staff at the originating institution—here, FCC Terre Haute—initiate the referral process in accordance with the procedures outlined in PS 5100.08, and submit the packet to the Warden for review.

    B. **Warden Approval**: If the Warden of the institution—here, FCC Terre Haute—concurs with the referral, the referral packet is signed and forwarded to the Regional Director in the region where the inmate is located. Plaintiffs in this case are within the North Central Region, the Regional Director for which is Andre Matevousian.

    C. **Regional Director Concurrence**: If the Regional Director concurs with the referral, the referral packet is signed and submitted to the Senior Deputy

4

       Assistant Director over DSCC ("SDAD, DSCC"). The SDAD, DSCC is Rick Stover.

D. **Initial Assessment by DSCC**: DSCC staff conduct an initial assessment of the referral packet and the inmate's potential need for placement at ADX-GP. If DSCC staff determine that the inmate would *not* be appropriate for ADX-GP placement, the SDAD, DSCC forwards the packet to the Assistant Director, CPD, who notifies the referring Warden via memorandum through the DSCC. If DSCC staff determine that the inmate *may* be appropriate for ADX-GP placement, the SDAD, DSCC forwards the packet to the National Discipline Hearing Administrator ("DHA"). The National DHA assigns a Hearing Administrator to conduct a hearing on the appropriateness of the inmate's placement at the ADX. The SDAD, DSCC also simultaneously forwards the packet to the Administrator, Psychology Services, Central Office, for review. The Administrator conducts a review of the psychological assessment of the inmate and reports findings to the SDAD, DSCC.

E. **Hearing**: The inmate is given at least 24 hours' notice before a hearing is held on the potential referral to ADX Florence. Hearing Administrators have correctional experience, including institution work with inmates, institutional experience in observing and evaluating inmate adjustment and disruptive behavior, and knowledge of the options available in BOP for dealing with such conduct. Hearing Administrators are familiar with BOP policies and operations, including the criteria for placement of inmates in different institutions with emphasis on the ADX. The inmate has the opportunity to be present throughout the hearing, except where institution security and good order are jeopardized. The inmate also has the opportunity to present evidence in his favor. The evidence must be material and relevant to the issue without posing a threat to staff, inmates, the public, or the orderly operation of the institution.

F. **Hearing Administrator's Recommendation**: At the conclusion of the hearing and following a review of all material, the Hearing Administrator prepares a written recommendation on whether placement of the inmate at the ADX is warranted. The recommendation summarizes all information and indicates the specific reasons for the recommendation with sufficient detail, unless the information poses a threat to any individual or the orderly operation of an institution.

G. The inmate receives a copy of the written report prepared by the Hearing Administrator as well as all the information utilized by the Hearing Administrator in making the recommendation, unless it is determined that release of this information could pose a threat to individual safety or institutional security, in which case limited information may be summarized and the rest withheld. Institution staff notes in the appropriate section of the report, and all copies, the date and time the inmate receives a copy of the

5

      report and the name and signature of the staff member delivering the report. A copy of the report with delivery confirmation must be returned to the Hearing Administrator.

  H.  **Hearing Administrator's Recommendation Comes to the Assistant Director, CPD**: The Hearing Administrator then sends a copy of the report with supporting documentation to the National DHA for review, before forwarding to me as the Assistant Director, CPD, or my designee. This report is ordinarily forwarded within 15 working days of the hearing.

  I.  **Assistant Director, CPD, Accepts or Rejects the Recommendation of Redesignation (the "Final Decision")**: As the Assistant Director for CPD, my designee, or I then review the Hearing Administrator's report and supporting documentation. I next accept or reject the Hearing Administrator's recommendation contained in the report, ordinarily within 30 working days of its receipt, unless, for good cause, there is a reason for delay.

  J.  **DSCC Enters a Designation**: As the Assistant Director, CPD, I then notify the SDAD, DSCC of the Final Decision, and the DSCC enters a designation in accordance with my decision. If the inmate in question is approved for placement at ADX Florence, the SDAD, DSCC forwards a copy of the decision to the institution for delivery to the inmate. The date and time the inmate receives the written decision, and the name and signature of the staff member confirming delivery, are recorded on all copies of the written decision and filed in the inmate's central file.

**Applicability of Designations Process to Plaintiffs**

16. For the Plaintiffs in this case, some, but not all, of the above-referenced steps in the ADX designation process have been completed. As a threshold matter, one Plaintiff—Brandon Basham was under consideration for ADX placement but has mental health needs necessitating a transfer to another facility[2] before further consideration can be given to ADX placement for him. The other 20 Plaintiffs who are being considered for ADX placement have been given notice and completed a hearing in accordance with the ADX Referral Memo. However, I have not made any decision as Assistant Director as to the placement of any Plaintiff. The relevant dates for the

---

[2] For security reasons, the exact location is not identified here.

6

various steps in the ongoing redesignation process appear in the chart below:[3]

| Name | Warden approval and Referral to Regional Director (after institution staff initiation) | Regional Director concurrence and referral to SDAD over DSCC | Referral to Hearing Administrator after initial assessment by DSCC | Date of Hearing for ADX Transfer |
|---|---|---|---|---|
| Basham, Brandon | 2/28/25 | N/A | N/A | No Hearing Scheduled |
| Coonce, Wesley | 3/4/25 | 4/1/25 | 4/8/25 | 4/17/25 |
| Council, Brandon | 2/27/25 | 3/17/25 | 4/2/25 | 4/17/25 |
| Fulks, Chadrick | 2/28/25 | 4/18/25 | 4/16/25 | 4/21/25 |
| Hagar, Thomas | 2/19/25 | 3/5/25 | 4/2/25 | 4/16/25 |
| Hall, Charles | 3/3/25 | 3/11/25 | 4/4/25 | 4/17/25 |
| Holder, Norris | 2/28/25 | 3/14/25 | 4/3/25 | 4/17/25 |
| Jackson, Richard | 2/27/25 | 3/17/25 | 4/2/25 | 4/8/25 |
| Kadamovas, Jurijus | 2/27/25 | 3/14/25 | 4/2/25 | 4/7/25 |
| Lawrence, Daryl | 2/26/25 | 3/5/25 | 4/2/25 | 4/8/25 |
| Mikhel, Iouri | 2/27/25 | 3/14/25 | 4/3/25 | 4/7/25 |
| Mikos, Ronald | 2/21/25 | 3/5/25 | 4/2/25 | 4/8/25 |
| Roane, James | 3/3/25 | 3/11/25 | 4/3/25 | 4/7/25 |
| Robinson, Julius | 2/21/25 | 3/5/25 | 4/2/25 | 4/8/25 |
| Runyon, David | 2/27/25 | 3/5/25 | 4/1/25 | 4/8/25 |
| Sanchez, Ricardo | 2/28/25 | 3/14/25 | 4/4/25 | 4/9/25 |
| Taylor, Rejon | 2/28/25 | 3/14/25 | 4/3/25 | 4/7/25 |
| Tipton, Richard | 2/28/25 | 3/14/25 | 4/2/25 | 4/7/25 |
| Torrez, Jorge | 3/13/25 | 4/3/25 | 4/4/25 | 4/9/25 |
| Troya, Daniel | 2/19/25 | 2/28/25 | 4/1/25 | 4/8/25 |
| Umana, Alejandro | 2/27/25 | 3/17/25 | 4/9/25 | 4/10/25 |

17. As detailed above, each of the Plaintiffs being considered for ADX placement has had a hearing on potential transfer to ADX. The Hearing Administrator's Report has not yet been delivered to me (in my role as Assistant Director, CPD) for any of these hearings. I expect they will be shortly as it is common practice for Hearing Administrators to complete their report contemporaneously or close in time to the hearing itself. Accordingly, I have not yet reviewed the

---

[3] This information has been provided to me through the Hearing Administrator.

7

Hearing Administrator's Report; nor have I made any ADX placement decision. Because no Assistant Director decision has been made, Plaintiffs have yet to be advised of their opportunity to appeal the decision through the Administrative Remedy Program. Accordingly, no Plaintiff has yet been designated to ADX Florence.

18. I am aware that Plaintiffs allege that President Trump's Executive Order No. 14,164 and Attorney General Bondi's Memorandum dated February 5, 2025, resulted in a "sham process" that "predetermined" Plaintiff's designations. This is not the case. Executive Order No. 14,164 states in relevant part that the "Attorney General shall take all lawful and appropriate action to ensure that these offenders are imprisoned in conditions consistent with the monstrosity of their crimes and the threats they pose." Attorney General Bondi's February 5, 2025 memorandum, in relevant part, directs that BOP "ensure that the conditions of confinement . . . are consistent with the security risks those inmates present because of their egregious crimes, criminal histories, and all other relevant considerations." Neither Executive Order No. 14,164 nor Attorney General Bondi's February 5, 2025, Memorandum revokes or otherwise alters PS 5100.08 or the ADX Referral Memo.

19. As the Assistant Director charged with making the decision to accept or reject the Hearing Administrator's recommendation, I will render a decision on each SCU inmate individually, weighing the factors outlined in the ADX Referral Memo and PS 5100.08.

20. Some SCU inmates, who are not Plaintiffs, are being considered for the Control Unit within ADX Florence instead of GP, because they have been identified as potentially dangerous and disruptive enough to require the additional restrictions of that unit.

21. It is also worth noting that at least one non-Plaintiff SCU inmate has affirmatively

8

sought expedited placement at ADX Florence since having his sentence commuted.[4]

22.     For Plaintiffs who may receive a designation to ADX Florence in the future, the ADX Referral Memo provides for a two-level administrative remedy appeal process after any such future designation.

23.     Historically, when an inmate has been designated to ADX-GP, BOP has waited for that administrative remedy process, including all appeals, to be completed prior to physically transferring the inmate. I am not currently aware of any reason to deviate from the historical practice of allowing the administrative remedy process to be completed as described above prior to transferring any Plaintiff in the event he is designated to ADX-GP.

24.     The two steps of that administrative remedy process for challenges to ADX-GP designations can take up to approximately 170 days from the date of the designation to be completed. More specifically, the time frame for the two-step process largely follows the process described in BOP Program Statement 1330.08, Administrative Remedy Program, except that it does not require the filing of a BP-8 or BP-9, which are required in other contexts.  The two-step process allows for 20 days for appeals (BP-10) to the SDAD, DSCC and 30 days (which can be extended by 30 days) for the SDAD, DSCC to respond. An inmate who is not satisfied with the SDAD, DSCC's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the SDAD, DSCC signed the response. The General Counsel has 40 days (which can be extended by 20 days) in which to respond. 28 C.F.R. § 542.18.

25.     If Plaintiffs are transferred from SCU to ADX Florence, the physical transfer process will be conducted in a safe and humane way. Transfers between BOP institutions are a regular occurrence. BOP takes seriously its statutory duty to "provide suitable quarters and provide

---

[4] Non-plaintiff SCU inmates are not identified here for security reasons.

for the safekeeping, care, and subsistence" of inmates in its custody. 18 U.S.C. § 4042. This is true when inmates are housed in BOP facilities as well when inmates are in transit.

26. In the event that a Plaintiff is transferred from FCC Terre Haute to ADX Florence in the future, if this Court were to one day order a transfer back to the originating institution (FCC Terre Haute), BOP would effectuate that transfer back as soon as practicable.

27. I am aware that the relief sought by Plaintiffs includes, in part, an order directing "Defendants to assign the Plaintiffs to housing locations based on the designation decisions that had been reached prior to the issuance of the Executive Order and Bondi Memo." The presumption that any redesignations of Plaintiffs were finalized prior to the issuance of President Trump's Executive Order No. 14,164 and Attorney General Bondi's Memorandum dated February 5, 2025, is not correct. To be clear, no designations were made, as to any Plaintiff, between the date of their commutations (December 23, 2024), and February 5, 2025 (Attorney General Memorandum).

*****

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 2nd day of May 2025.

_[signature]_

Shane Salem, Assistant Director
U.S. Department of Justice
Federal Bureau of Prisons
Central Office
Washington, D.C.