**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| REJON TAYLOR, *et al.*, | |
| *Plaintiffs*, | |
| v. | Case No.  1:25-cv-01161-TJK |
| DONALD J. TRUMP, *et al.*, in their official capacities, | |
| *Defendants*. | |

**DECLARATION OF MARIA V. MORRIS**

I, MARIA V. MORRIS, declare:

1.       I am an attorney licensed to practice in the District of Columbia. I am Senior Counsel at the ACLU National Prison Project and an attorney of record to the Plaintiffs in this litigation. If called as a witness, I could and would testify competently to the facts stated herein, all of which are within my personal knowledge.

2.       On April 22, 2025, after a phone call about discovery in advance of the Preliminary Injunction hearing, I emailed Christopher Edelman, counsel for Defendants, a request for production of a limited number of documents.   Defendants agreed to produce BP-338s (classification documents) for each Plaintiff for the time between December 23, 2024 and April 1, 2025, the notice of hearing regarding the ADX referral and hearing report, in addition to non-privileged and non-security sensitive documents relied upon by BOP in the hearing process for each Plaintiff.  A true and correct copy of the email exchange between Mr. Edelman and me is attached as **Exhibit 1**.

3.       One of the documents requested was "[t]he The BOP spreadsheet, chart, or other document that listed BOP's recommendations for redesignations for the Plaintiffs, as referenced in the Memorandum in Support of a Temporary Restraining Order (Doc. 2-1 at 39) and the Meredith Declaration (Doc. 2-27 at 11), including all versions of that document." *See* Ex. 1 at 4. Mr. Edelman acknowledged the spreadsheet's existence, but declined to produce it. *Id.* at 1.

4.       Defendants produced no documents for Plaintiff Basham.  It is Plaintiffs' counsel's understanding that Defendants currently plan to send Plaintiff Basham to another facility before reconsidering him for ADX placement.

5.       Defendants produced the BP-338s for the Plaintiffs on May 5, 2025.  They produced one BP-338 from after the commutation for each Plaintiff except Plaintiff Hall and Plaintiff Basham and one or two earlier BP-338s for all the Plaintiffs except Plaintiff Basham.

6.       On May 7 and 8, 2025, Defendants produced hearing related documents for all Plaintiffs except Plaintiff Basham.  These documents, collectively referred to as "ADX Referral Packets," including a memo from the Health Services Administrator regarding ADX referrals,

stating whether there are medical issues precluding transfer, a Health Services Report, an ADX referral mental health evaluation and report, a memo from the USP Terre Haute Warden to the Regional Director of the North Central Region making a referral to ADX, a memo from the Regional Director to Defendant Rick Stover regarding the ADX referral, a memo from Rick Stover to the Chief Discipline Hearing Administrator regarding the ADX referral, a Notice of Hearing on Referral for Transfer to ADX Florence General Population, an ADX General Population Hearing Administrator's Report, a Summary Reentry Plan – Progress Report, which sets out information about the incarcerated person's entire time in BOP custody, and in some packets, other documents such as Extraordinary Security Concerns Reviews, statements by the incarcerated person, certificates, witness statements and grievances.   A true and correct copy of an example of the Hearing Notice, Administrator's Report and Summary Reentry Plan – Progress Report are attached as **Exhibit 2, filed under seal**. The person's date of birth and medical information have proposed redactions.

7.    I have reviewed the documents Defendants produced.

8.    BOP Program Statement 5310.16 establishes the ADX exclusionary criteria to divert people who are seriously mentally ill from ADX placement. Doc. 2-7. Two of the exclusionary criteria are "the inmate's mental health disorder or cognitive limitations make it unlikely he/she could successfully progress through the phases of the …ADX" and "ADX placement is likely to exacerbate an inmate's mental health condition." *Id.* at 19.[1]  Of the 20 Plaintiffs for whom Defendants produced documents, nine had been found to meet ADX exclusionary criteria. (Plaintiffs ███████████████████████████████ ███████████). All nine were found to have "mental health disorder or cognitive limitations [that] make it unlikely [they] could successfully progress through ADX Florence."  Five of them were also found to meet the criteria that placement in ADX would likely exacerbate their mental health conditions. (Plaintiffs ██████████████████████████████).

_____

[1] Pinpoint citations to documents filed on the Court's docket are to the page number assigned by the ECF system, and not any internal page numbers.

9.      If a person meets the exclusionary criteria, then this exclusion can be overridden, and he can be sent to ADX, only if BOP identifies "extraordinary security needs" such that the person "cannot be managed elsewhere." Doc. 2-7 at 19.

10.      Each of the Extraordinary Security Concerns Reviews that was produced by Defendants states: "He was referred for placement at the ADX because he was previously sentenced to death but was granted clemency in December 2024, leading to his current life sentence." Every one of the nine Plaintiffs whose documents show they were found to meet the ADX exclusionary criteria was found to have "extraordinary security needs." Each of these reviews is signed by ███████████████████████████, as well as other people.  An example of one of the Extraordinary Security Concerns Reviews is attached hereto as **Exhibit 3, filed under seal**.

11.      According to the documents produced to us, four Plaintiffs (███████████████████████) had ADX referral mental health evaluations in January 2025.  Each of these four were found to meet the exclusionary criteria.  No further actions were taken to move their referrals forward until February 12 or 13, 2025.  They were all subject to Extraordinary Security Concern Reviews, starting on February 14, 2025.   The timeline of the referrals for these four is as follows:

| | MH eval | Medical Eval | Extra-ordinary Security Concerns Review | Warden Memo | Regional Director Memo | Stover Memo | Notice | Hearing |
|---|---|---|---|---|---|---|---|---|
| ████ | 1/14 | 2/12 | 2/18 | 3/4 | 4/1 | 4/8 | 4/16 | 4/17 |
| | 1/22 | 2/13 | 2/14 | 2/27 | 3/17 | 4/9 | 4/9 | 4/10 |
| | 1/24 | 2/12 | 3/4 | 2/27 | 3/17 | 4/2 | 4/16 | 4/17 |
| | 1/24 | 2/13 | 3/5 | 3/3 | 3/11 | 4/4 | 4/16 | 4/17 |

12.      According to the documents produced to us, the first event in the ADX referral process, the medical assessment for ADX, occurred for all but two of the other Plaintiffs on February 12 or 13, with the last two, ████████████████████, occurring later.  The timeline of

3

| | Medical Eval | MH eval | Extra-ordinary Security Concerns Review | Warden Memo | Regional Director Memo | Stover Memo | Notice | Hearing |
|---|---|---|---|---|---|---|---|---|
| | 2/12 | 2/12 | 3/5 | 2/27 | 3/14 | 4/3 | 4/4 | 4/7 |
| | 2/13 | 2/12 | 3/5 | 2/27 | 3/5 | 4/1 | 4/3 | 4/8 |
| | 2/13 | 2/12 | | 2/19, 3/14 | 2/28 | 4/1 | 4/3 | 4/8 |
| | 2/12 | 2/12 | | 2/19 | 3/5 | 4/2 | 4/14 | 4/16 |
| | 2/13 | 2/13 | 2/27 | 2/28 | 3/14 | 4/4 | 4/7 | 4/9 |
| | 2/12 | 2/14 | 2/28 | 2/27 | 3/14 | 4/2 | 4/3 | 4/7 |
| | 2/13 | 2/18 | | 2/28 | 3/14 | 4/3 | 4/16 | 4/17 |
| | 2/13 | 2/19 | | 2/21 | 3/5 | 4/3 | 4/3 | 4/8 |
| | 2/26 | 2/19 | | 3/3 | 3/11 | 4/3 | 4/4 | 4/7 |
| | 2/13 | 2/19 | | 2/21 | 3/5 | 4/2 | 4/3 | 4/8 |
| | 2/13 | 2/19 | | 2/28, 4/1 | 3/14 | 4/3 | 4/4 | 4/7 |
| | 2/13 | 2/19 | | 2/27 | 3/17 | 4/2 | 4/3 | 4/8 |
| | 2/12 | 2/20 | 3/14 | 2/28 | 4/14 | 4/16 | 4/18 | 4/18 |
| | 2/13 | 2/21 | | 3/24 | 3/14 | 4/2 | 4/3 | 4/7 |
| | 2/12 | 2/25 | | 2/26 | 3/5 | 4/2 | 4/3 | 4/8 |
| | 3/13 | 3/7 | | 3/13 | 4/3 | 4/4 | 4/4 | 4/9 |

the referrals for the other Plaintiffs is as follows:

13.    People at medical care level 3 and 4 are not appropriate for designation to ADX absent a need for "extraordinary security measures". Doc. 2-10 at 11. Based on my review of documents that ███████ provided counsel and Defendants produced, ███████ had a medical care level of 4 as of January 21, 2025. By the time of the record review of his medical condition for the ADX referral, BOP had dropped his care level to 3. On April 2, 2025, BOP dropped his medical care level to 2, a care level that does not pose an obstacle for sending a person to ADX. True and correct copies of the documents showing this progression are attached hereto as **Exhibit 4, filed under seal**.

14.    ███████ is at medical care level 3. BOP nonetheless decided he could be housed at ADX. A true and correct copy of an email showing this is attached hereto as **Exhibit 5, filed under seal**.

4

15.    I have reviewed the disciplinary histories that were produced as part of the ADX Referral Packets.  Plaintiffs ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ have no disciplinaries on their record.  Plaintiffs ▮▮▮▮▮▮▮▮▮▮▮▮▮ have had no disciplinaries in over a decade.  Plaintiffs ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ have had no violent or escape-related disciplinaries for over a decade.

16.    In their opposition brief filed May 2, 2025, Defendants represented to the Court that it would take upwards of 170 days before Plaintiffs would be moved.  Doc. 40 at 37.  In light of this representation to the Court, the next day (May 3, 2025) Plaintiffs' counsel asked Defendants to stipulate that they would not move the Plaintiffs to ADX until November 1, 2025.  Mr. Edelman, Counsel for Defendants, said that BOP would not agree to so stipulate, and that BOP was only willing to agree to not move the Plaintiffs to ADX until May 31, 2025.  A true and correct copy of emails between Corene Kendrick and Christopher Edelman, which I was copied on, reflecting this exchange is attached hereto as **Exhibit 6**.

17.    The BOP currently has 3,572 people serving life sentences.  A true and correct copy of a screenshot of the BOP website showing this is attached hereto as **Exhibit 7**.

18.    ADX currently houses 358 people.  A true and correct copy of a screenshot of the BOP website showing this is attached hereto as **Exhibit 8.**

19.    A true and correct copy of the Supplemental Declaration of Paul Gibson is attached hereto as **Exhibit 9**.

20.    A true and correct copy of the Declaration of Eric King is attached hereto as **Exhibit 10**.

21.    A true and correct copy of the Declaration of Plaintiff Ronald Mikos is attached hereto as **Exhibit 11, filed under seal**.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 12th day of May, 2025 in Rockville, Maryland.

/s/ *Maria V. Morris*
Maria V. Morris

5